UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PET PEED SOLUTIONS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> FURRYFRESHNESS, LLC, BRYSON BILICEK, AND JENNIFER BILICEK <br><br> Defendants. | Civil Action No. <br><br> Jury Trial Requested |

# COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Plaintiff Pet Peed Solutions, LLC which d/b/a My Pet Peed ("MPP" or "Plaintiff"), who files this Complaint against FurryFreshness, LLC ("FurryFreshness"), Bryson Bilicek ("Bryson"), and Jennifer Bilicek ("Jennifer" and collectively "Defendants"), and alleges, on knowledge as to its own actions, and otherwise on information and belief, as follows:

## JURISDICTION AND VENUE

1.  This is a civil action seeking damages and permanent injunction for trade secret misappropriation pursuant to the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831 *et seq.* and the Texas Uniform Trade Secrets Act ("TUTSA") Tex. Civ. Prac. & Rem. Code Ann. § 134A.002 *et seq.*, as well as common law misappropriation, unfair competition and for substantial and related claims of unfair trade practices pursuant to Texas law all arising from the Defendants' unauthorized use of MPP's proprietary formula for pet urine remover, and alternatively for false advertising pursuant to the Lanham Act, 15 U.S.C. § 1125.

- 1 -

- 2 -

2. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. This case presents claims arising under the laws of the United States, specifically the DTSA and the Lanham Act.

3. This court has supplemental jurisdiction over all additional state law remedies pursuant to 28 U.S.C. § 1367 because the causes of action for unfair trade practices and common law misappropriation based upon Texas law are based upon the same operative facts as the causes of action for federal trade secret misappropriation and federal false advertising.

4. This Court has personal jurisdiction over Defendants because Defendants were formed under the laws of this State and/or are a foreign company conducting business in this State, including in this District. The Defendants' acts occurred in this State, including in this District, and Defendants should anticipate being haled into court in this State.

5. Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c) because this is a civil action involving allegations under federal statutes, and a substantial part of the events or omissions giving rise to MPP's claims occurred in this District.

## THE PARTIES

6. Plaintiff MPP is a limited liability company formed under the laws of the State of Texas with its principal place of business at 25702 Aldine Westfield Road, Spring, Texas 77373.

7. Upon information and belief, Defendant FurryFreshness is a limited liability company formed under the laws of the State of Texas with its principal place of business listed with the Texas Secretary of State at 3507 North Lamar Blvd., Suite 303201, Austin, Texas 78703.

8. Upon information and belief, Defendant Bryson is an individual residing in the State of California.. Upon information and belief, Defendant Bryson was domiciled in the State of Texas, with an address of 600 Barrett Lane, Austin, Texas 78733, until relocating to California after receiving a cease-and-desist letter from Plaintiff.

9. Upon information and belief, Defendant Jennifer Bilicek is an individual residing in the State of California. Upon information and belief, Defendant Jennifer Bilicek was domiciled in the State of Texas, with an address of 600 Barrett Lane, Austin, Texas 78733, until relocating to California after receiving a cease-and-desist letter from Plaintiff.

## FACTUAL BACKGROUND

10. MPP is a manufacturer, distributor, and seller of its unique pet urine carpet cleaner, marketed and sold as "My Pet Peed".

11. MPP's proprietary carpet cleaner formula originated from John Simmons who operated under the business name "Enviro Resources", which operated and manufactured its products out of Houston area in the State of Texas. Mr. Simmons is the uncle of Plaintiff MPP's owner, Jarrett Bilicek ("Jarrett"), and Defendant FurryFreshness's owner, Bryson.

12. Defendant Bryson and Jarrett are brothers. Jennifer is Bryson's wife, and Jarrett's sister-in-law. Bryson and Jarrett have worked together on business ventures in the past. Due to their familial relationship, as well as their extensive business dealings, Jarrett developed a position of trust with his brother and former business partner, Bryson.

13. From about 2010 to 2016, Enviro Resources' private labeled and sold pet cleaning solutions to Jarrett, which he sold under the My Pet Peed brand. In or about 2016, Jarrett began to manufacture and bottle products at the direction of Enviro Resources. Jarrett brought his brother Bryson into the industry and assisted Bryson with setting up his own private label brand, Furry Freshness, which was also supplied by Enviro Resources through MPP's bottling efforts in Houston.

14. On August 4, 2020, MPP entered into an agreement with Mr. Simmons to purchase the business assets of Enviro Resources for the price of Two Million and 00/100 Dollars ($2,000,000) (the "Agreement").

15. One of the main assets acquired by MPP was the proprietary stain removal formula (the "Formula") which Mr. Simmons had previously private labeled for MPP and FurryFreshness. By virtue of the sale of Enviro Resources' assets and the Agreement, MPP became the owner of the Formula and the trade secret rights therein.

16. MPP did not have adequate funds to purchase the assets of Enviro Resources outright. The deal was structured to incorporate an initial payment of $300,000 to Enviro Resources, with the remainder to be paid over a period of time with interest. MPP has paid Mr. Simmons in full pursuant to the Agreement, and with interest added, MPP has paid approximately $2,120,512.00 to Enviro Resources.

17. In order to pay the downpayment, Jarrett and Bryson attempted to make a deal whereby Jarrett would license the formula to Bryson to sell product that MPP would continue to manufacture, bottle, and private label the formula for FurryFreshness. In connection therewith, Bryson provided his brother Jarrett an upfront payment of $150,000. This money was used in the initial down payment for MPP's acquisition of Enviro Resources' business assets. The majority of Jarrett and Bryson's discussions and negotiations in connection with the license agreement and MPP's acquisition of Enviro Resources took place in or near, or was otherwise directed at, Houston, Texas.

18. The parties understood that Bryson and FurryFreshness had no rights to use the Formula outside of their relationship with MPP. These issues are corroborated by messages between Bryson and Jarrett.

4888-5513-8486 v6

19. After acquiring the assets and Formula from Enviro Resources, MPP continued to private label a cleaning solution out of its Houston area facility for FurryFreshness while they attempted to negotiate the terms of the license. Moreover, MPP manufactured, bottled, and labeled product using the Formula for Furry Freshness at a steep discount compared to what FurryFreshness paid under Enviro Resources. Upon information and belief, FurryFreshness was afforded an average 67.35% savings on the private labeled products after MPP's purchase from Enviro Resources. Such benefits were only provided to Bryson and FurryFreshness due to Bryson's position of confidence and trust as Jarrett's brother and business partner, with whom he had done business in the past, and as gratitude for assisting MPP with purchasing the assets of Enviro Resources.

20. For nearly a year, the parties attempted to negotiate and formalize the license and bottling agreement between the parties. Several iterations of licensing structures were considered and negotiated. Some even included a license through which FurryFreshness would be able to directly manufacture and bottle its product using the Formula.

21. Defendants were engaged in the licensing negotiations and were fully aware of MPP's ownership and rights of the Formula, and their lack of ownership rights in the Formula.

22. Ultimately, the parties were never able to agree to a long-term license and no license agreement was ever signed. As such, FurryFreshness never obtained rights to use the Formula.

23. Jarrett repaid Bryson the $150,000 with interest.  Bryson accepted the repayment.

24. The parties discussed an amicable split whereby Bryson would create his own formula. Bryson confirmed in writing that he had no right to use the Formula. In so doing, Bryson specifically acknowledged that he could not create a product that utilized a key surfactant found in the Formula.

25. Throughout the licensing negotiations and Jarrett and Bryson's communications, it was clear that all parties understood the Formula was proprietary and confidential, and that MPP owned the Formula and all related rights therein. In other words, Bryson and FurryFreshness were under obligations to keep the Formula in confidence and were not permitted to use the Formula absent explicit approval from MPP and Jarrett. Bryson has acknowledged the ownership of the Formula by MPP and Jarrett in communications between the parties.

26. Accordingly, the only party legally entitled to manufacture and sell products containing the Formula is MPP (hereinafter, MPP's product containing the Formula is referred to as the "MPP Solution").

27. Since the time when licensing negotiations were abandoned, Defendants cut ties with MPP and set up their own bottling facility to manufacture and sell "FurryFreshness", a pet urine cleaning product which unlawfully uses the Formula, as described in further detail below (hereinafter, the FurryFreshness product manufactured and bottled by FurryFreshness is referred to as the "FurryFreshness Solution").

28. Despite FurryFreshness no longer utilizing MPP for private labeling, FurryFreshness has explicitly advertised the FurryFreshness Solution as containing the same formula as when it was private labeled from MPP. In other words, FurryFreshness has advertised that it is continuing to use the Formula despite the fact that it has no rights to do so. An example of such advertisements, which was published on July 14, 2023, after FurryFreshness and Bryson ceased doing business with MPP and Jarrett, is provided below.



29. Furthermore, FurryFreshness's advertising slogan openly states that FurryFreshness is in fact using the Formula owned by MPP: "NEW FRESH LOOK – **Same great product**!" (emphasis added):



Attached as **Exhibit 1** is a representative sample of various advertising materials that include this slogan and that upon information and belief were published by FurryFreshness (these were pulled from an archival website and converted to PDF format; unrelated third party advertisements were removed). FurryFreshness directs its advertisements and sells its products to residents of this District.

30. FurryFreshness also falsely advertises in its "back story" that FurryFreshness developed its own formula which FurryFreshness has been selling to customers since 2015:



31. These advertisements undoubtedly refer to the Formula that FurryFreshness previously had private labeled by Enviro Resources, and then private labeled by MPP after MPP acquired Enviro Resources' business assets. Indeed, upon information and belief, the only change that FurryFreshness and Bryson made to the product is the color scheme of the label.

32. On August 31, 2023, upon learning of the FurryFreshness advertisements stating that it is selling the same formula, MPP sent a letter to Bryson and FurryFreshness (the "Letter") demanding that FurryFreshness cease use of the Formula, destroy all copies of the Formula in Bryson or FurryFreshness's possession, and cease and desist all activities that violate obligations owed to MPP, among other things, in an effort to resolve FurryFreshness's unlawful use of the Formula. MPP hoped to open the door for pursuing an amicable licensing agreement or compromise so as to avoid a legal battle between the brothers and former business partners.

4888-5513-8486 v6

33. Bryson and FurryFreshness responded to the Letter stating that FurryFreshness developed its own formula and was not using the MPP Formula.

34. FurryFreshness's assertions in its advertising and promotional materials are in direct conflict with its position in the response letter. These are mutually exclusive positions. If the advertisements stating that FurryFreshness has "the same great formula" are true, then the above statement that FurryFreshness developed its own formula are false because the Formula (as was originally used by FurryFreshness) was developed by Mr. Simmons. Alternatively, if FurryFreshness did develop its own formula, then the advertisements stating "the formula remains unchanged" are false. Simply put, FurryFreshness cannot both be using the same Formula and a newly and independently developed formula. In other words, Bryson and FurryFreshness were either lying to their customers or to Jarrett and MPP, or both.

35. After MPP received FurryFreshness's response that it was not using the Formula, MPP engaged in testing to determine the chemical composition of the FurryFreshness Solution in comparison with the MPP Solution (the "Testing").

36. For the Testing, a lab was asked to independently obtain sample products from both FurryFreshness and MPP to run a comparative analysis. The Testing revealed a direct match between the products offered by both companies within the standard of error.

37. Specifically, the Testing revealed that the formula for each product used the same compositions in nearly identical quantities. In other words, upon information and belief, the test results show that FurryFreshness is continuing to manufacture its product using the Formula.

4888-5513-8486 v6

38. The MPP Solution is made using the Formula. The Testing revealed that Key Ingredient A[1] in the MPP Solution is qualitatively the same composition as Key Ingredient A in the FurryFreshness Solution. The testing further revealed that Key Ingredient A is also quantitatively added to the FurryFreshness Solution in almost the exact same amount. This amount is shown to be within 0.001 of each other, which is well below the testing margin of error.

39. The Testing further revealed that Key Ingredient B in the MPP Solution, which is a surfactant, appears to be the exact same molecule structure and has a 99% overlap in the FurryFreshness Solution. This result indicates that someone either purposefully selected the exact same chemical as Key Ingredient B or knowingly selected a chemical that is known to have the exact same chemical properties as Key Ingredient B.

40. The Testing reveals that the MPP Solution and the FurryFreshness Solution are nearly identical formulas, such that each of the Solutions was derived from the Formula. Alternatively, if the precise Formula recipe is not in the FurryFreshness Solution, the exact same chemical structures and quantities were selected such that it could not be formulated absent access to the Formula.

41. Furthermore, in FurryFreshness's response letter, it singled out a particular, proprietary ingredient from the Formula and stated that it does not use this ingredient in the FurryFreshness Solution. However, the Testing revealed definitively that this ingredient is used in the FurryFreshness Solution. This is Key Ingredient B as discussed above.

---

[1] The exact ingredients in the Formula are proprietary and confidential. As such, MPP does not identify any ingredients by name, and instead refers to the ingredients as "Key Ingredient [X]".

42.     Upon information and belief, all activities performed by FurryFreshness are done at the direction of its owner and executives, Bryson and Jennifer Bilicek, who directly benefits from the actions of the company.

### **COUNT I: DEFEND TRADE SECRETS ACT**

43.     MPP repeats and realleges the allegations contained in paragraphs 1 through 42, as if fully set forth herein.

44.     The Formula is a trade secret that MPP owns exclusively by virtue of its acquisition and purchase of Enviro Resources' business assets. Enviro Resources developed the Formula over the course of years and at considerable time, resources, and expense. MPP invested significant time and expense to acquire Enviro Resources' business assets, namely the Formula.

45.     The Formula is utilized in MPP's products, namely the MPP Solution, which is sold and marketed in interstate commerce.

46.     At all relevant times, MPP made efforts that are reasonable under the circumstances to maintain the secrecy of the Formula, including restricting access and disclosure of the Formula. The only individuals with access to the formula are those in a position of confidence with MPP. Specifically, Bryson was only allowed to have possession of a copy of the Formula through his position of confidence with MPP and Jarrett, as a business partner, brother, and attempted licensee of MPP.

47.     The proprietary Formula is an item of independent economic value. The Formula's value is derived from it not being generally known to, and not being readily ascertainable or available to, third parties who can obtain economic value from the disclosure or use of the Formula.

48.     Without MPP's authorization, Defendants misappropriated MPP's proprietary Formula and used it without MPP's authorization for their own benefit. The Defendants'

misappropriation was willful, without legal justification, and without notice and MPP's written authorization and/or consent.

49. According to FurryFreshness' own advertisement shown in Paragraph 28, FurryFreshness has sold its misappropriated solution to over 300,000 families in interstate commerce, which includes customers in this District.

50. As a direct and proximate result of Defendants' misappropriation of MPP's trade secrets, MPP has sustained and will sustain substantial damages and has been and will continue to be harmed, including through Defendants' unauthorized and unlicensed use of the Formula for which Defendants have paid no licensing fees and through Defendants' ability to unfairly compete with MPP in offering the FurryFreshness Solution containing the proprietary Formula.

51. MPP is further entitled to exemplary damages based on Defendants' willful and malicious misappropriation of MPP's trade secret.

## COUNT II: TEXAS UNIFORM TRADE SECRETS ACT

52. MPP repeats and realleges the allegations contained in paragraphs 1 through 51, as if fully set forth herein.

53. MPP is the owner of the proprietary Formula by virtue of its purchase of all Enviro Resources' business assets. Defendants were given access to the formula only as part of their negotiations for a license and only due to Defendants' particular relationship of trust with Plaintiff. The parties have always understood and agreed that Plaintiff owned the formula and Defendants did not have the right to use or disclose the formula without Plaintiff's permission. When that license failed to materialize or otherwise was terminated, and after Defendants were refunded the initial sum with interest, Defendants confirmed they had no right to use the formula.

54. The Formula constitutes a protected trade secret under the Texas Uniform Trade Secrets Act ("TUTSA"). Tex. Civ. Prac. & Rem. Code § 134A.002(6). Such information is not

generally known or readily ascertainable, and would have tremendous value to a competitor who obtained the data without the time, effort, and expense it cost MPP to obtain such information on its own and to use the information in competition with MPP.

55. Defendants used the proprietary Formula without MPP's consent, and with knowledge that the Formula was MPP's confidential and proprietary information.

56. Defendants used the proprietary Formula to manufacture, bottle, and sell its own brand of FurryFreshness product which was not manufactured or authorized by MPP. Defendants even advertised the product as being the "same great formula" as the product which previously had been manufactured and authorized by MPP.

57. As a proximate result of Defendants' actions, MPP has suffered damages, and is also likely to suffer immediate and irreparable harm for which defendants cannot adequately compensate MPP. MPP, therefore, requests a permanent injunction.

58. Because Defendants' conduct was willful and malicious, MPP also seeks exemplary damages pursuant to Texas Civil Practice and Remedies Code section 134A.004(b).

59. Additionally, MPP is entitled to recovery of its attorneys' fees. Tex. Civ. Prac. & Rem. Code § 134A.005.

### COUNT III: COMMON LAW MISAPPROPRIATION

60. MPP repeats and realleges the allegations contained in paragraphs 1 through 59, as if fully set forth herein.

61. As fully described above, the Formula was created by Enviro Resources through extensive time, labor, skill, and resources. MPP purchased this Formula for a large sum of money, thereby stepping into the shoes of, and compensating Enviro Resources for the benefit of its time, skill, and labor.

62. Defendants have improperly used the Formula without MPP's permission.

63. Upon information and belief, Defendants have not expended their own resources to develop their own cleaning solution formula to sell to customers. Instead, Defendants merely copied the Formula. Defendants have further not compensated MPP for the use of the Formula.

64. As such, Defendants are operating with a free ride on the development of the Formula used in the FurryFreshness Solution and are directly competing with MPP selling the same or a substantially similar solution. Based on this, Defendants have gained a special competitive advantage and are benefiting from a "free ride" based on MPP and its predecessor in title's development costs and subsequent acquisition.

65. As a result of Defendants' misappropriation of MPP's Formula, MPP has suffered and continues to suffer damages in an amount to be proven at trial. MPP has further suffered and will continue to suffer irreparable injury, detriment, and harm for which a monetary award is an insufficient remedy.

### COUNT IV: UNFAIR COMPETITION AND UNFAIR TRADE PRACTICES

66. MPP repeats and realleges the allegations contained in paragraphs 1 through 65, as if fully set forth herein.

67. Defendants' actions are contrary to honest dealing and honest practice in industrial and commercial matters such that Defendants' actions give rise to a civil cause of action.

68. A confidential relationship existed among MPP and Defendants. As a result of this relationship, Defendants had access to MPP's confidential information, including the Formula. Defendants have used MPP's confidential information for their own benefit without the consent or authorization of MPP. Defendants have breached the confidential relationship with MPP, and Defendants have and will continue to benefit from that breach, through their use, disclosure of, and/or unfair competition with, MPP's confidential information.

69. As a direct and proximate result of Defendants' unfair competition, MPP has suffered and will continue to suffer injury, loss, harm, or damage, in an amount to be determined at trial.

70. As a direct and proximate result of Defendants' conduct, MPP will suffer, and continues to suffer, substantial harm and is entitled to compensatory and exemplary damages. These damages specifically include, but are not limited to, recapture of all compensation or other value that Defendants receive, in any form, as a result of their unfair competition.

71. As a direct and proximate result of Defendants' conduct, MPP has suffered, and will continue to suffer, immediate and irreparable injury, loss, harm or damage, unless or until Defendants are restrained from their present conduct.

## COUNT V: FALSE ADVERTISING

72. MPP repeats and realleges the allegations contained in paragraphs 1 through 71, as if fully set forth herein.

73. Alternatively, in the event this Court finds that Defendants have not used the Formula in violation of MPP's rights and Defendants' obligations under law, then Defendants are liable under the Lanham Act for false advertising. 15 U.S.C. § 1125.

74. As set forth above, it is uncontested that FurryFreshness previously utilized the Formula in its products. Enviro Resources, and then MPP, private labeled FurryFreshness's products containing the Formula, which is owned by MPP.

75. After licensing negotiations fell apart between MPP and FurryFreshness, FurryFreshness began manufacturing and bottling its products.

76. In connection with this, as set forth in more detail above, FurryFreshness markets its products as containing "the same great formula" and directly claims in its advertisements that

4888-5513-8486 v6

"the formula remains unchanged". Upon information and belief, these advertisements are directed by Defendants Bryson and Jennifer Bilicek.

77. FurryFreshness further advertises that its product has won awards and has certain certifications. For example, FurryFreshness has published advertisements which state the following:

> So we got to work and formulated FurryFreshness Stain Remover! Which has since received the sought after Seal of Approval from The Carpet and Rug Institute (CRI). After all of the hard formulation work, we're proud to have a formula that removes odors and bacteria rather than simply masking it. We've now had the honor of serving over 300,000 pet parents (and counting!)

*See* Paragraph 27.

78. However, upon information and belief, these accolades and certifications were for the product manufactured by MPP using the Formula, and not a formula developed by FurryFreshness. Accordingly, if FurryFreshness is not using the Formula, it necessarily changed the formula, rendering these advertisements false and misleading.

79. Defendants' false and misleading statements of fact about the FurryFreshness formula were made in interstate commerce in one or more commercial advertisements or promotions on the FurryFreshness website and in other ways.

80. The false and misleading statements of fact regarding FurryFreshness's formula either deceived, or had the capacity to deceive a substantial segment of potential consumers in a material way, in that they were likely to influence the consumer's purchasing decisions and cause competitive or commercial injury to MPP.

81. MPP is experiencing irreparable harm and further irreparable harm to MPP is imminent as a result of Defendants' unlawful conduct, and MPP is without an adequate remedy at law. MPP is entitled to an injunction restraining Defendant, other officers, directors, agents,

employees, representatives and all persons acting in concert with them from engaging in further such acts of false and/or misleading advertising.

82. As a result of Defendants' wrongful conduct, MPP has suffered, and will continue to suffer, substantial damages. MPP is entitled to recover damages in an amount to be proven at trial.

83. Defendants have obtained unjust profits, gains, and advantages as a result of their wrongful conduct, and will continue to realize unjust profits, gain, and advantages as a result of their wrongful conduct as long as such wrongful conduct is permitted to continue. MPP is entitled to recover from Defendants their profits, in an amount to be proven at trial.

84. Defendants' actions were knowing and willfully intended to reap the benefit of the goodwill of MPP and cause confusion, deception or mistake and/or has occurred with willful blindness. Because Defendants' conduct has been willful, the award of actual damages and profits should be trebled.

85. MPP is also entitled to expenses of litigation, including MPP's attorneys' fees.

## COUNT VII: REVERSE PASSING OFF

86. MPP repeats and realleges the allegations contained in paragraphs 1 through 85, as if fully set forth herein.

87. This count is against Defendants for violating or conspiracy to violate 15 U.S.C. § 1125(a).

88. As described above, the Defendants have used the Formula in their products even though MPP is the legal owner of the Formula.

89. In essence, Defendants are taking credit for the development of the Formula, and are using the Formula as if they are the rightful owner of such.

90. Defendants' conduct is likely to cause confusion and deception as to the affiliation, connection, or association of Defendants and their goods and services with MPP.

91. This conduct resulted in injury to MPP, including Defendants usurping of MPP's business of selling products containing the Formula, at the enrichment of Defendants.

92. Such actions constitute unfair trade practices and "reverse passing off" under the Lanham Act.

93. In addition to damages, pursuant to 15 U.S.C. § 1117(a), MPP is entitled to an award of attorney's fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered in its favor and against the Defendants, as follows:

1. For a preliminary and permanent injunction enjoining and restraining Defendants, their employees, representatives, agents, and all other persons or entities acting in concert with them both during the pendency of this action and thereafter from manufacturing, reproducing, distributing, adapting, displaying, advertising, promoting, offering for sale, and/or selling any products using the Formula or that are substantially similar to the Formula such that the products must have been developed utilizing the Formula;

2. For an order requiring Defendants to destroy all copies of the Formula in Defendants' possession, or in the possession of anyone on behalf of Defendants, and prohibiting any future use of the same for any purpose;

3. For an order requiring Defendants to destroy any competing formulas or recipes derived from Defendants access to the Formula;

      4.      For actual damages, enhanced damages, treble damages, any awardable statutory damages, Defendants' profits, treble the amount of Defendants' profits and punitive damages, all in amounts to be proven at trial, plus interest;

      5.      That Defendants be ordered to pay costs, including reasonable attorneys' fees; and

      6.      For such relief as the Court deems just and equitable.

A Jury Trial is Herby Requested.

Dated:  May 28, 2024

Respectfully submitted,

*/s/ R. Devin Ricci*
R. Devin Ricci (TX #24123875)
devin.ricci@keanmiller.com
Mary M. Love (TX #24126021)
mary.love@keanmiller.com
KEAN MILLER LLP
BankPlus Tower
909 Poydras Street, Suite 3600
New Orleans, LA 70112
(504) 585-3050

***Attorneys for Plaintiff, Pet Peed Solutions, LLC***