**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **PET PEED SOLUTIONS, LLC,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 4:24-cv-2011** |
| **FURRYFRESHNESS, LLC,**<br>**BRYSON BILICEK and**<br>**JENNIFER BILICEK,** | |
| **Defendants.** | |

**DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES,
AND COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT**

Defendants FurryFreshness, LLC, Bryson Bilicek and Jennifer Bilicek, (collectively "Defendants "), file this Answer and Affirmative Defenses to Pet Peed Solutions, LLC's ("MPP") Complaint ("Complaint"). Defendants respond to the allegations contained in the numbered paragraphs of MPP's Complaint below. Defendants deny the allegations and characterizations in MPP's Complaint and attached Exhibits unless expressly admitted in the following paragraphs.

## JURISDICTION AND VENUE

1.      This is a civil action seeking damages and permanent injunction for trade secret misappropriation pursuant to the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831 et seq. and the Texas Uniform Trade Secrets Act ("TUTSA") Tex. Civ. Prac. & Rem. Code Ann. § 134A.002 et seq., as well as common law misappropriation, unfair competition and for substantial and related claims of unfair trade practices pursuant to Texas law all arising from the Defendants' unauthorized use of MPP's proprietary formula for pet urine remover, and alternatively for false advertising pursuant to the Lanham Act, 15 U.S.C. § 1125.

**ANSWER:**    Defendants admit that this is a civil action.  Defendants deny the remaining allegations of this set forth in Paragraph 1 of the Complaint.

2.    This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. This case presents claims arising under the laws of the United States, specifically the DTSA and the Lanham Act.

**ANSWER:**    Defendants admit that the Complaint alleges that this Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §1331.  Except as expressly admitted, Defendants deny the remainder of allegations set forth in Paragraph 2 of the Complaint.

3.    This court has supplemental jurisdiction over all additional state law remedies pursuant to 28 U.S.C. § 1367 because the causes of action for unfair trade practices and common law misappropriation based upon Texas law are based upon the same operative facts as the causes of action for federal trade secret misappropriation and federal false advertising.

**ANSWER:**    Defendants admit that the Complaint alleges that this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  Except as expressly admitted, Defendants deny the remainder of allegations set forth in Paragraph 3 of the Complaint.

4.    This Court has personal jurisdiction over Defendants because Defendants were formed under the laws of this State and/or are a foreign company conducting business in this State, including in this District. The Defendants' acts occurred in this State, including in this District, and Defendants should anticipate being haled into court in this State.

**ANSWER:** Defendants deny that they have committed any unlawful acts in this State or this judicial district. Defendants admit that they are subject to personal jurisdiction in this judicial district.

5. Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c) because this is a civil action involving allegations under federal statutes, and a substantial part of the events or omissions giving rise to MPP's claims occurred in this District.

**ANSWER:** Defendants admit that venue is proper in this district but not convenient. Beyond this, the allegations in this paragraph are legal conclusions to which no response is required.

## THE PARTIES

6. Plaintiff MPP is a limited liability company formed under the laws of the State of Texas with its principal place of business at 25702 Aldine Westfield Road, Spring, Texas 77373.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6 of the Complaint, and therefore deny the same.

7. Upon information and belief, Defendant FurryFreshness is a limited liability company formed under the laws of the State of Texas with its principal place of business listed with the Texas Secretary of State at 3507 North Lamar Blvd., Suite 303201, Austin, Texas 78703.

**ANSWER:** FurryFreshness admits it is a limited liability company formed under the laws of the State of Texas. FurryFreshness denies its principal place of business is at 3507 North Lamar Blvd., Suite 303201, Austin, Texas 78703. FurryFreshness's principal place of business is at 1220 Satterwhite Road Suite 303, Buda, Texas 78610.

8. Upon information and belief, Defendant Bryson is an individual residing in the State of California. Upon information and belief, Defendant Bryson was domiciled in the State of

Texas, with an address of 600 Barrett Lane, Austin, Texas 78733, until relocating to California after receiving a cease-and-desist letter from Plaintiff.

**ANSWER:**   Mr. Bilicek admits he is an individual residing in California and was previously domiciled in Texas at 600 Barrett Lane, Austin, Texas 78733.  Mr. Bilicek denies that his relocation to California has anything to do with the purported "cease-and-desist letter" sent from MPP.

9.       Upon information and belief, Defendant Jennifer Bilicek is an individual residing in the State of California. Upon information and belief, Defendant Jennifer Bilicek was domiciled in the State of Texas, with an address of 600 Barrett Lane, Austin, Texas 78733, until relocating to California after receiving a cease-and-desist letter from Plaintiff.

**ANSWER:**   Ms. Bilicek admits she is an individual residing in California and was previously domiciled in Texas at 600 Barrett Lane, Austin, Texas 78733.  Ms. Bilicek denies that her relocation to California has anything to do with the purported "cease-and-desist letter" sent from MPP.

**FACTUAL BACKGROUND**

10.       MPP is a manufacturer, distributor, and seller of its unique pet urine carpet cleaner, marketed and sold as "My Pet Peed".

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained of this paragraph, and therefore deny the same.

11.       MPP's proprietary carpet cleaner formula originated from John Simmons who operated under the business name "Enviro Resources", which operated and manufactured its products out of Houston area in the State of Texas. Mr. Simmons is the uncle of Plaintiff MPP's owner, Jarrett Bilicek ("Jarrett"), and Defendant FurryFreshness's owner, Bryson.

4

**ANSWER:**     Defendants admit that Mr. Simmons is related to Mr. Jarrett Bilicek and Mr. Bryson Bilicek.   Defendants admit that Mr. Simmons operated a business named "Enviro Resources", which operated and manufactured its products out of Houston area in the State of Texas.  Defendants do not know precisely what is referred to as "MPP's proprietary carpet cleaner formula" and on that ground deny the remainder of the allegations contained in this paragraph.

12.     Defendant Bryson and Jarrett are brothers. Jennifer is Bryson's wife, and Jarrett's sister-in-law. Bryson and Jarrett have worked together on business ventures in the past. Due to their familial relationship, as well as their extensive business dealings, Jarrett developed a position of trust with his brother and former business partner, Bryson.

**ANSWER:**     Defendants admit that Mr. Bryson Bilicek and Mr. Jarrett Bilicek are brothers.  Defendants admit that Mr. Bryson Bilicek is married to Ms. Bilicek, and that Ms. Bilicek is Mr. Jarrett Bilicek's sister-in-law.  Defendants deny the remaining allegations of this paragraph.

13.     From about 2010 to 2016, Enviro Resources' private labeled and sold pet cleaning solutions to Jarrett, which he sold under the My Pet Peed brand. In or about 2016, Jarrett began to manufacture and bottle products at the direction of Enviro Resources. Jarrett brought his brother Bryson into the industry and assisted Bryson with setting up his own private label brand, Furry Freshness, which was also supplied by Enviro Resources through MPP's bottling efforts in Houston.

**ANSWER:**     Defendants admit that FurryFreshness purchased cleaner from Enviro Resources for a time. Defendants deny the allegation that Mr. Jarrett Bilicek brought Mr. Bryson Bilicek into the industry and assisted him with setting up FurryFreshness.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph, and therefore deny the same.

14.     On August 4, 2020, MPP entered into an agreement with Mr. Simmons to purchase the business assets of Enviro Resources for the price of Two Million and 00/100 Dollars ($2,000,000) (the "Agreement").

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore deny the same.

15.     One of the main assets acquired by MPP was the proprietary stain removal formula (the "Formula") which Mr. Simmons had previously private labeled for MPP and FurryFreshness. By virtue of the sale of Enviro Resources' assets and the Agreement, MPP became the owner of the Formula and the trade secret rights therein.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore deny the same.

16.     MPP did not have adequate funds to purchase the assets of Enviro Resources outright. The deal was structured to incorporate an initial payment of $300,000 to Enviro Resources, with the remainder to be paid over a period of time with interest. MPP has paid Mr. Simmons in full pursuant to the Agreement, and with interest added, MPP has paid approximately $2,120,512.00 to Enviro Resources.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore deny the same.

17.     In order to pay the downpayment, Jarrett and Bryson attempted to make a deal whereby Jarrett would license the formula to Bryson to sell product that MPP would continue to manufacture, bottle, and private label the formula for FurryFreshness. In connection therewith, Bryson provided his brother Jarrett an upfront payment of $150,000. This money was used in the initial down payment for MPP's acquisition of Enviro Resources' business assets. The majority of

6

Jarrett and Bryson's discussions and negotiations in connection with the license agreement and MPP's acquisition of Enviro Resources took place in or near, or was otherwise directed at, Houston, Texas.

**ANSWER:**   Defendants deny Mr. Jarrett Bilicek and Mr. Bryson Bilicek attempted to make any deal whereby Mr. Jarrett Bilicek would license the formula to Mr. Bryson Bilicek to sell product that MPP would continue to manufacture, bottle, and private label the formula for FurryFreshness.  Defendants deny Mr. Bryon Bilicek provided Mr. Jarrett Bilicek with $150,000 in connection to such a deal.  Defendants further deny any discussions or negotiations took place in connection to such a deal.  Defendants admit Mr. Bryon Bilicek provided Mr. Jarrett Bilicek with $150,000.

18.     The parties understood that Bryson and FurryFreshness had no rights to use the Formula outside of their relationship with MPP. These issues are corroborated by messages between Bryson and Jarrett.

**ANSWER:**   Denied.

19.     After acquiring the assets and Formula from Enviro Resources, MPP continued to private label a cleaning solution out of its Houston area facility for FurryFreshness while they attempted to negotiate the terms of the license. Moreover, MPP manufactured, bottled, and labeled product using the Formula for Furry Freshness at a steep discount compared to what FurryFreshness paid under Enviro Resources. Upon information and belief, FurryFreshness was afforded an average 67.35% savings on the private labeled products after MPP's purchase from Enviro Resources. Such benefits were only provided to Bryson and FurryFreshness due to  Bryson's position of confidence and trust as Jarrett's brother and business partner, with whom he had done business in the past, and as gratitude for assisting MPP with purchasing the assets of Enviro Resources.

**ANSWER:**   Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore deny the same.

20.      For nearly a year, the parties attempted to negotiate and formalize the license and bottling agreement between the parties. Several iterations of licensing structures were considered and negotiated. Some even included a license through which FurryFreshness would be able to directly manufacture and bottle its product using the Formula.

**ANSWER:**   Denied insofar as "the license and bottling agreement between the parties" in this paragraph refers to the alleged agreement in Paragraph 17.  Defendants admit the parties attempted to negotiate a license agreement.

21.      Defendants were engaged in the licensing negotiations and were fully aware of MPP's ownership and rights of the Formula, and their lack of ownership rights in the Formula.

**ANSWER:**   Denied.

22.      Ultimately, the parties were never able to agree to a long-term license and no license agreement was ever signed. As such, FurryFreshness never obtained rights to use the Formula.

**ANSWER:**   Defendants admit as to the lack of agreement and deny the remaining allegations in this paragraph.

23.      Jarrett repaid Bryson the $150,000 with interest. Bryson accepted the repayment.

**ANSWER:**   Admitted.

24.      The parties discussed an amicable split whereby Bryson would create his own formula. Bryson confirmed in writing that he had no right to use the Formula. In so doing, Bryson specifically acknowledged that he could not create a product that utilized a key surfactant found in the Formula.

**ANSWER:**   Denied.

8

25.     Throughout the licensing negotiations and Jarrett and Bryson's communications, it was clear that all parties understood the Formula was proprietary and confidential, and that MPP owned the Formula and all related rights therein. In other words, Bryson and FurryFreshness were under obligations to keep the Formula in confidence and were not permitted to use the Formula absent explicit approval from MPP and Jarrett. Bryson has acknowledged the ownership of the Formula by MPP and Jarrett in communications between the parties.

**ANSWER**:     Denied.

26.     Accordingly, the only party legally entitled to manufacture and sell products containing the Formula is MPP (hereinafter, MPP's product containing the Formula is referred to as the "MPP Solution").

**ANSWER**:     Denied.

27.     Since the time when licensing negotiations were abandoned, Defendants cut ties with MPP and set up their own bottling facility to manufacture and sell "FurryFreshness", a pet urine cleaning product which unlawfully uses the Formula, as described in further detail below (hereinafter, the FurryFreshness product manufactured and bottled by FurryFreshness is referred to as the "FurryFreshness Solution").

**ANSWER**:     Defendants deny that Defendants cut ties with MPP after the licensing negotiations were abandoned.  Defendants continued to purchase product from MPP until product quality became an issue.  Defendants further deny that FurryFreshness Solution uses the formula. Defendants admit that Defendants have their own bottling facility to manufacture and sell FurryFreshness Solution.

28.     Despite FurryFreshness no longer utilizing MPP for private labeling, FurryFreshness has explicitly advertised the FurryFreshness Solution as containing the same formula

as when it was private labeled from MPP. In other words, FurryFreshness has advertised that it is continuing to use the Formula despite the fact that it has no rights to do so. An example of such advertisements, which was published on July 14, 2023, after FurryFreshness and Bryson ceased doing business with MPP and Jarrett, is provided below.



**ANSWER:**    Defendants deny that Defendants ceased doing business with MPP and Mr. Jarrett Bilicek before July 14, 2023.  Defendants admit that a true copy of a FurryFreshness advertisement published on July 14, 2023, was provided below Paragraph 28 of the Complaint. Defendants deny the remaining allegations of this paragraph.

29.    Furthermore, FurryFreshness's advertising slogan openly states that FurryFreshness is in fact using the Formula owned by MPP: "NEW FRESH LOOK – Same great product!" (emphasis added):



Attached as Exhibit 1 is a representative sample of various advertising materials that include this slogan and that upon information and belief were published by FurryFreshness (these were pulled from an archival website and converted to PDF format; unrelated third party advertisements were removed). FurryFreshness directs its advertisements and sells its products to residents of this District.

**ANSWER:**   Defendants admit that a true copy of a FurryFreshness advertisement is attached as Exhibit 1 to the Complaint, and that the advertisement states, "NEW FRESH LOOK Same great product!"  Defendants admit FurryFreshness directs it advertisements and sells its products to residents of this District.  Defendants deny the remaining allegations of this paragraph.

30.     FurryFreshness also falsely advertises in its "back story" that FurryFreshness developed its own formula which FurryFreshness has been selling to customers since 2015:



**ANSWER:**    Denied.

31.    These advertisements undoubtedly refer to the Formula that FurryFreshness previously had private labeled by Enviro Resources, and then private labeled by MPP after MPP acquired Enviro Resources' business assets. Indeed, upon information and belief, the only change that FurryFreshness and Bryson made to the product is the color scheme of the label.

**ANSWER:**    Denied.

32.    On August 31, 2023, upon learning of the FurryFreshness advertisements stating that it is selling the same formula, MPP sent a letter to Bryson and FurryFreshness (the "Letter") demanding that FurryFreshness cease use of the Formula, destroy all copies of the Formula in Bryson or FurryFreshness's possession, and cease and desist all activities that violate obligations owed to MPP, among other things, in an effort to resolve FurryFreshness's unlawful use of the Formula. MPP hoped to open the door for pursuing an amicable licensing agreement or compromise so as to avoid a legal battle between the brothers and former business partners.

**ANSWER:**    Defendants admit to receiving the Letter from MPP on September 22, 2023. Defendants deny the remaining allegations of this paragraph.

12

33.     Bryson and FurryFreshness responded to the Letter stating that FurryFreshness developed its own formula and was not using the MPP Formula.

**ANSWER:**     Admitted.

34.     FurryFreshness's assertions in its advertising and promotional materials are in direct conflict with its position in the response letter. These are mutually exclusive positions. If the advertisements stating that FurryFreshness has "the same great formula" are true, then the above statement that FurryFreshness developed its own formula are false because the Formula (as was originally used by FurryFreshness) was developed by Mr. Simmons. Alternatively, if FurryFreshness did develop its own formula, then the advertisements stating "the formula remains unchanged" are false. Simply put, FurryFreshness cannot both be using the same Formula and a newly and independently developed formula. In other words, Bryson and FurryFreshness were either lying to their customers or to Jarrett and MPP, or both.

**ANSWER:**     Denied.

35.     After MPP received FurryFreshness's response that it was not using the Formula, MPP engaged in testing to determine the chemical composition of the FurryFreshness Solution in comparison with the MPP Solution (the "Testing").

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore deny the same.

36.     For the Testing, a lab was asked to independently obtain sample products from both FurryFreshness and MPP to run a comparative analysis. The Testing revealed a direct match between the products offered by both companies within the standard of error.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore deny the same.

37.     Specifically, the Testing revealed that the formula for each product used the same compositions in nearly identical quantities. In other words, upon information and belief, the test results show that FurryFreshness is continuing to manufacture its product using the Formula.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore deny the same.

38.     The MPP Solution is made using the Formula. The Testing revealed that Key Ingredient A1 in the MPP Solution is qualitatively the same composition as Key Ingredient A in the FurryFreshness Solution. The testing further revealed that Key Ingredient A is also quantitatively added to the FurryFreshness Solution in almost the exact same amount. This amount is shown to be within 0.001 of each other, which is well below the testing margin of error.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore deny the same.

39.     The Testing further revealed that Key Ingredient B in the MPP Solution, which is a surfactant, appears to be the exact same molecule structure and has a 99% overlap in the FurryFreshness Solution. This result indicates that someone either purposefully selected the exact same chemical as Key Ingredient B or knowingly selected a chemical that is known to have the exact same chemical properties as Key Ingredient B.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore deny the same.

40.     The Testing reveals that the MPP Solution and the FurryFreshness Solution are nearly identical formulas, such that each of the Solutions was derived from the Formula. Alternatively, if the precise Formula recipe is not in the FurryFreshness Solution, the exact same

chemical structures and quantities were selected such that it could not be formulated absent access to the Formula.

**ANSWER:**   Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore deny the same.  FurryFreshness's current solution is not believed to use the same ingredients as the MPP solution.

41.   Furthermore, in FurryFreshness's response letter, it singled out a particular, proprietary ingredient from the Formula and stated that it does not use this ingredient in the FurryFreshness Solution. However, the Testing revealed definitively that this ingredient is used in the FurryFreshness Solution. This is Key Ingredient B as discussed above.

**ANSWER:**   Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore deny the same.

42.   Upon information and belief, all activities performed by FurryFreshness are done at the direction of its owner and executives, Bryson and Jennifer Bilicek, who directly benefits from the actions of the company.

**ANSWER:**   Defendants admit that Mr. and Ms. Bilicek control FurryFreshness but deny that all "benefits" of the company go only to them.

## COUNT I: DEFEND TRADE SECRETS ACT

43.   MPP repeats and realleges the allegations contained in paragraphs 1 through 42, as if fully set forth herein.

**ANSWER:**   Defendants incorporate herein its responses to the allegations set forth above in Paragraphs 1 through 42.

44.   The Formula is a trade secret that MPP owns exclusively by virtue of its acquisition and purchase of Enviro Resources' business assets. Enviro Resources developed the Formula over

the course of years and at considerable time, resources, and expense. MPP invested significant time and expense to acquire Enviro Resources' business assets, namely the Formula.

**ANSWER:**   Denied.

45.     The Formula is utilized in MPP's products, namely the MPP Solution, which is sold and marketed in interstate commerce.

**ANSWER:**   Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore deny the same.

46.     At all relevant times, MPP made efforts that are reasonable under the circumstances to maintain the secrecy of the Formula, including restricting access and disclosure of the Formula. The only individuals with access to the formula are those in a position of confidence with MPP. Specifically, Bryson was only allowed to have possession of a copy of the Formula through his position of confidence with MPP and Jarrett, as a business partner, brother, and attempted licensee of MPP.

**ANSWER:**   Denied.

47.     The proprietary Formula is an item of independent economic value. The Formula's value is derived from it not being generally known to, and not being readily ascertainable or available to, third parties who can obtain economic value from the disclosure or use of the Formula.

**ANSWER:**   Denied.

48.     Without MPP's authorization, Defendants misappropriated MPP's proprietary Formula and used it without MPP's authorization for their own benefit. The Defendants' misappropriation was willful, without legal justification, and without notice and MPP's written authorization and/or consent.

**ANSWER:**   Denied.

49.     According to FurryFreshness' own advertisement shown in Paragraph 28, FurryFreshness has sold its misappropriated solution to over 300,000 families in interstate commerce, which includes customers in this District.

**ANSWER:**     Denied.

50.     As a direct and proximate result of Defendants' misappropriation of MPP's trade secrets, MPP has sustained and will sustain substantial damages and has been and will continue to be harmed, including through Defendants' unauthorized and unlicensed use of the Formula for which Defendants have paid no licensing fees and through Defendants' ability to unfairly compete with MPP in offering the FurryFreshness Solution containing the proprietary Formula.

**ANSWER:**     Denied.

51.     MPP is further entitled to exemplary damages based on Defendants' willful and malicious misappropriation of MPP's trade secret.

**ANSWER:**     Denied.

### COUNT II: TEXAS UNIFORM TRADE SECRETS ACT

52.     MPP repeats and realleges the allegations contained in paragraphs 1 through 51, as if fully set forth herein.

**ANSWER**:     Defendants incorporate herein its responses to the allegations set forth above in Paragraphs 1 through 51.

53.     MPP is the owner of the proprietary Formula by virtue of its purchase of all Enviro Resources' business assets. Defendants were given access to the formula only as part of their negotiations for a license and only due to Defendants' particular relationship of trust with Plaintiff. The parties have always understood and agreed that Plaintiff owned the formula and Defendants did not have the right to use or disclose the formula without Plaintiff's permission. When that license

failed to materialize or otherwise was terminated, and after Defendants were refunded the initial sum with interest, Defendants confirmed they had no right to use the formula.

>    **ANSWER:**    Denied.

54.     The Formula constitutes a protected trade secret under the Texas Uniform Trade Secrets Act ("TUTSA"). Tex. Civ. Prac. & Rem. Code § 134A.002(6). Such information is not generally known or readily ascertainable, and would have tremendous value to a competitor who obtained the data without the time, effort, and expense it cost MPP to obtain such information on its own and to use the information in competition with MPP.

>    **ANSWER:**    Denied.

55.     Defendants used the proprietary Formula without MPP's consent, and with knowledge that the Formula was MPP's confidential and proprietary information.

>    **ANSWER:**    Denied.

56.     Defendants used the proprietary Formula to manufacture, bottle, and sell its own brand of FurryFreshness product which was not manufactured or authorized by MPP. Defendants even advertised the product as being the "same great formula" as the product which previously had been manufactured and authorized by MPP.

>    **ANSWER:**    Denied.

57.     As a proximate result of Defendants' actions, MPP has suffered damages, and is also likely to suffer immediate and irreparable harm for which defendants cannot adequately compensate MPP. MPP, therefore, requests a permanent injunction.

>    **ANSWER:**    Denied.

58.     Because Defendants' conduct was willful and malicious, MPP also seeks exemplary damages pursuant to Texas Civil Practice and Remedies Code section 134A.004(b).

**ANSWER:**    Denied.

59.    Additionally, MPP is entitled to recovery of its attorneys' fees. Tex. Civ. Prac. & Rem. Code § 134A.005.

**ANSWER:**    Denied.

## COUNT III: COMMON LAW MISAPPROPRIATION

60.    MPP repeats and realleges the allegations contained in paragraphs 1 through 59, as if fully set forth herein.

**ANSWER**:    Defendants incorporate herein its responses to the allegations set forth above in Paragraphs 1 through 59.

61.    As fully described above, the Formula was created by Enviro Resources through extensive time, labor, skill, and resources. MPP purchased this Formula for a large sum of money, thereby stepping into the shoes of, and compensating Enviro Resources for the benefit of its time, skill, and labor.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore deny the same.

62.    Defendants have improperly used the Formula without MPP's permission.

**ANSWER:**    Denied.

63.    Upon information and belief, Defendants have not expended their own resources to develop their own cleaning solution formula to sell to customers. Instead, Defendants merely copied the Formula. Defendants have further not compensated MPP for the use of the Formula.

**ANSWER:**    Denied.

64.    As such, Defendants are operating with a free ride on the development of the Formula used in the FurryFreshness Solution and are directly competing with MPP selling the same or a substantially similar solution. Based on this, Defendants have gained a special competitive

advantage and are benefiting from a "free ride" based on MPP and its predecessor in title's development costs and subsequent acquisition.

      **ANSWER:**   Denied.

65.     As a result of Defendants' misappropriation of MPP's Formula, MPP has suffered and continues to suffer damages in an amount to be proven at trial. MPP has further suffered and will continue to suffer irreparable injury, detriment, and harm for which a monetary award is an insufficient remedy.

      **ANSWER:**   Denied.

### COUNT IV: UNFAIR COMPETITION AND UNFAIR TRADE PRACTICES

66.     MPP repeats and realleges the allegations contained in paragraphs 1 through 65, as if fully set forth herein.

      **ANSWER**:   Defendants incorporate herein its responses to the allegations set forth above in Paragraphs 1 through 65.

67.     Defendants' actions are contrary to honest dealing and honest practice in industrial and commercial matters such that Defendants' actions give rise to a civil cause of action.

      **ANSWER:**   Denied.

68.     A confidential relationship existed among MPP and Defendants. As a result of this relationship, Defendants had access to MPP's confidential information, including the Formula. Defendants have used MPP's confidential information for their own benefit without the consent or authorization of MPP. Defendants have breached the confidential relationship with MPP, and Defendants have and will continue to benefit from that breach, through their use, disclosure of, and/or unfair competition with, MPP's confidential information.

      **ANSWER:**   Denied.

69.     As a direct and proximate result of Defendants' unfair competition, MPP has suffered and will continue to suffer injury, loss, harm, or damage, in an amount to be determined at trial.

**ANSWER:**   Denied.

70.     As a direct and proximate result of Defendants' conduct, MPP will suffer, and continues to suffer, substantial harm and is entitled to compensatory and exemplary damages. These damages specifically include, but are not limited to, recapture of all compensation or other value that Defendants receive, in any form, as a result of their unfair competition.

**ANSWER:**   Denied.

71.     As a direct and proximate result of Defendants' conduct, MPP has suffered, and will continue to suffer, immediate and irreparable injury, loss, harm or damage, unless or until Defendants are restrained from their present conduct.

**ANSWER:**   Denied.

## COUNT V: FALSE ADVERTISING

72.     MPP repeats and realleges the allegations contained in paragraphs 1 through 71, as if fully set forth herein.

**ANSWER**:   Defendants incorporate herein its responses to the allegations set forth above in Paragraphs 1 through 71.

73.     Alternatively, in the event this Court finds that Defendants have not used the Formula in violation of MPP's rights and Defendants' obligations under law, then Defendants are liable under the Lanham Act for false advertising. 15 U.S.C. § 1125.

**ANSWER:**   Denied.

74.     As set forth above, it is uncontested that FurryFreshness previously utilized the Formula in its products. Enviro Resources, and then MPP, private labeled FurryFreshness's products containing the Formula, which is owned by MPP.

**ANSWER:**   Defendants admit that they previously purchased solution from Enviro Resources and MPP but deny the remaining allegations in this paragraph.

75.     After licensing negotiations fell apart between MPP and FurryFreshness, FurryFreshness began manufacturing and bottling its products.

**ANSWER:**   Denied.

76.     In connection with this, as set forth in more detail above, FurryFreshness markets its products as containing "the same great formula" and directly claims in its advertisements that "the formula remains unchanged". Upon information and belief, these advertisements are directed by Defendants Bryson and Jennifer Bilicek.

**ANSWER:**   Defendants deny FurryFreshness's advertisements are directed by Mr. and Ms. Bilicek.  Defendants admit that the advertisements attached as Exhibit 1 to the Complaint state: "the same great formula" and "the formula remains unchanged."  Defendants deny the remaining allegations of this paragraph.

77.     FurryFreshness further advertises that its product has won awards and has certain certifications. For example, FurryFreshness has published advertisements which state the following:

> So we got to work and formulated FurryFreshness Stain Remover! Which has since received the sought after Seal of Approval from The Carpet and Rug Institute (CRI). After all of the hard formulation work, we're proud to have a formula that removes odors and bacteria rather than simply masking it. We've now had the honor of serving over 300,000 pet parents (and counting!)

See Paragraph 27.

**ANSWER:**   Admitted.

78.     However, upon information and belief, these accolades and certifications were for the product manufactured by MPP using the Formula, and not a formula developed by FurryFreshness. Accordingly, if FurryFreshness is not using the Formula, it necessarily changed the formula, rendering these advertisements false and misleading.

**ANSWER:**   Denied.

79.     Defendants' false and misleading statements of fact about the FurryFreshness formula were made in interstate commerce in one or more commercial advertisements or promotions on the FurryFreshness website and in other ways.

**ANSWER:**   Denied.

80.     The false and misleading statements of fact regarding FurryFreshness's formula either deceived, or had the capacity to deceive a substantial segment of potential consumers in a material way, in that they were likely to influence the consumer's purchasing decisions and cause competitive or commercial injury to MPP.

**ANSWER:**   Denied.

81.     MPP is experiencing irreparable harm and further irreparable harm to MPP is imminent as a result of Defendants' unlawful conduct, and MPP is without an adequate remedy at law. MPP is entitled to an injunction restraining Defendant, other officers, directors, agents, employees, representatives and all persons acting in concert with them from engaging in further such acts of false and/or misleading advertising.

**ANSWER:**   Denied.

82.     As a result of Defendants' wrongful conduct, MPP has suffered, and will continue to suffer, substantial damages. MPP is entitled to recover damages in an amount to be proven at trial.

**ANSWER:**   Denied.

83.     Defendants have obtained unjust profits, gains, and advantages as a result of their wrongful conduct, and will continue to realize unjust profits, gain, and advantages as a result of their wrongful conduct as long as such wrongful conduct is permitted to continue. MPP is entitled to recover from Defendants their profits, in an amount to be proven at trial.

**ANSWER:**     Denied.

84.     Defendants' actions were knowing and willfully intended to reap the benefit of the goodwill of MPP and cause confusion, deception or mistake and/or has occurred with willful blindness. Because Defendants' conduct has been willful, the award of actual damages and profits should be trebled.

**ANSWER:**     Denied.

85.     MPP is also entitled to expenses of litigation, including MPP's attorneys' fees.

**ANSWER:**     Denied.

## COUNT VII[1]: REVERSE PASSING OFF

86.     MPP repeats and realleges the allegations contained in paragraphs 1 through 85, as if fully set forth herein.

**ANSWER**:     Defendants incorporates herein its responses to the allegations set forth above in Paragraphs 1 through 85.

87.     This count is against Defendants for violating or conspiracy to violate 15 U.S.C. § 1125(a).

**ANSWER:**     Denied.

88.     As described above, the Defendants have used the Formula in their products even though MPP is the legal owner of the Formula.

---

[1] Count VI is mislabeled as "Count VII" in MPP's Complaint.

**ANSWER:**   Denied.

89.     In essence, Defendants are taking credit for the development of the Formula, and are using the Formula as if they are the rightful owner of such.

**ANSWER:**   Denied.

90.     Defendants' conduct is likely to cause confusion and deception as to the affiliation, connection, or association of Defendants and their goods and services with MPP.

**ANSWER:**   Denied.

91.     This conduct resulted in injury to MPP, including Defendants usurping of MPP's business of selling products containing the Formula, at the enrichment of Defendants.

**ANSWER:**   Denied.

92.     Such actions constitute unfair trade practices and "reverse passing off" under the Lanham Act.

**ANSWER:**   Denied.

93.     In addition to damages, pursuant to 15 U.S.C. § 1117(a), MPP is entitled to an award of attorney's fees and costs.

**ANSWER:**   Denied.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered in its favor and against the Defendants, as follows:

1.     For a preliminary and permanent injunction enjoining and restraining Defendants, their employees, representatives, agents, and all other persons or entities acting in concert with them both during the pendency of this action and thereafter from manufacturing, reproducing, distributing, adapting, displaying, advertising, promoting, offering for

sale, and/or selling any products using the Formula or that are substantially similar to the Formula such that the products must have been developed utilizing the Formula;

2. For an order requiring Defendants to destroy all copies of the Formula in Defendants' possession, or in the possession of anyone on behalf of Defendants, and prohibiting any future use of the same for any purpose;

3. For an order requiring Defendants to destroy any competing formulas or recipes derived from Defendants access to the Formula;

4. For actual damages, enhanced damages, treble damages, any awardable statutory damages, Defendants' profits, treble the amount of Defendants' profits and punitive damages, all in amounts to be proven at trial, plus interest;

5. That Defendants be ordered to pay costs, including reasonable attorneys' fees; and

6. For such relief as the Court deems just and equitable.

**ANSWER**:    This section of the Complaint sets forth MPP's requested relief, to which no response is required.  Defendants deny that MPP's is entitled to any relief requested in any of Paragraphs 1-6 of the Prayer section of the Complaint or otherwise. To the extent any statement in that section is deemed to include any factual allegations, Defendants deny such allegations.

## AFFIRMATIVE AND OTHER DEFENSES

Subject to the responses above, Defendants contend and assert the following affirmative and other defenses in responses to the allegations in the Complaint. By asserting these defenses, Defendants do not admit that they bear the burden of proof on any issue and does not accept any burden it would not otherwise bear. Defendants' investigation of its defenses is continuing, and Defendants reserve the right to amend their Answer to allege and assert any additional affirmative

defenses, at law or in equity, that may now exist or in the future be available based upon discovery and further investigation in this case.

### FIRST AFFIRMATIVE DEFENSE
### <u>FAILURE TO STATE A CLAIM</u>

MPP's Complaint fails to state a claim upon which relief can be granted because, inter alia, MPP's Complaint does not state plausible allegations with regard to Counts I, II, III, IV, and/or VII.

### SECOND AFFIRMATIVE DEFENSE
### <u>REVERSE ENGINEERING</u>

MPP's claims alleging misappropriation of trade secrets are barred, in whole or in part, because of Defendants' reverse engineering of the Enviro Resources cleaning solution in 2016.

### THIRD AFFIRMATIVE DEFENSE
### <u>NO IMPROPER MEANS</u>

MPP's claims alleging misappropriation of trade secrets are barred, in whole or in part, because Defendants did not obtain any purported trade secrets or confidential information by improper means.

### FOURTH AFFIRMATIVE DEFENSE
### <u>NO USE</u>

MPP's claims alleging misappropriation of trade secrets are barred, in whole or in part, because Defendants have not used and are not using any of MPP's alleged trade secrets or confidential information.

### FIFTH AFFIRMATIVE DEFENSE
### <u>INFORMATION READILY AVAILABLE</u>

MPP's claims alleging misappropriation of trade secrets are barred, in whole or in part, because the information allegedly misappropriated was readily ascertainable by proper means.

## SIXTH AFFIRMATIVE DEFENSE
## <u>BAD FAITH</u>

MPP's claims are barred, in whole or in part, because MPP brought the claims in bad faith and without reasonable inquiry.

## SEVENTH AFFIRMATIVE DEFENSE
## <u>PREEMPTION</u>

MPP's common law misappropriation and unfair competition claims are barred, in whole or in part, to the extent they are preempted by the TUTSA.

## EIGHTH AFFIRMATIVE DEFENSE
## <u>NO UNFAIR COMPETITION OR UNFAIR TRADE PRACTICES</u>

Defendants have not committed and are not now committing any acts of unfair competition or unfair trade practices.

## NINTH AFFIRMATIVE DEFENSE
## <u>NO FALSE ADVERTISING</u>

Defendants have not committed and are not now committing any acts of false advertising under 15 U.S.C. § 1125(a).

## TENTH AFFIRMATIVE DEFENSE
## <u>NO REVERSE PASSING OFF</u>

Defendant have not engaged and are not now engaging in any reverse passing off under 15 U.S.C. § 1125(a).

## ELEVENTH AFFIRMATIVE DEFENSE
## <u>NO DAMAGES</u>

MPP has not been damaged and are not entitled to damages pursuant to 15 U.S.C. § 1117 as a result of the acts alleged by MPP to have been committed by Defendants because MPP has suffered no damages.

## TWELFTH AFFIRMATIVE DEFENSE
## <u>NO TREBLED DAMAGES</u>

MPP is not entitled to a judgment of up to and including three times actual damages, or any increase at all, pursuant to 15 U.S.C. § 1117 for reasons including, but not limited to, that Defendants have not engaged in conduct warranting such an award and because any alleged unfair competition or false advertising by Defendants. which Defendants deny, was not and is not willful.

## THIRTEENTH AFFIRMATIVE DEFENSE
## <u>NO ATTORNEY'S FEES</u>

MPP is not entitled to an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117 for reasons including, but not limited to, that Defendants have not engaged in conduct warranting such an award and because any alleged unfair competition or false advertising by Defendants, which Defendants deny, was not and is not willful.

## FOURTEENTH AFFIRMATIVE DEFENSE
## <u>NO INJURY</u>

MPP's claims are barred, in whole or in part, because MPP has not and will not suffer injury in fact and has not and will not lose money or property as a result of Defendants' conduct, and therefore lacks standing.

## RESERVATION OF ALL AFFIRMATIVE DEFENSES

Defendants hereby gives notice that it intends to rely upon any other matter constituting an avoidance or affirmative defense as set forth in Rule 8(c) of the Federal Rules of Civil Procedure, and that it reserves the right to seek leave to amend this Answer to add to, amend, withdraw, or modify these defenses as its investigation continues and as discovery may require.

## COUNTERCLAIMS

### JURISDICTION AND VENUE

1.     Defendants' foregoing answers to the paragraphs and allegations of the Complaint are incorporated in these Counterclaims.

2.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1367.

3.     This Court has jurisdiction over MPP, which has availed itself to the rights and privileges of this forum by suing Defendants in this District.

4.     Subject to Defendants' defenses and denials, and based solely on MPP's filing of its Complaint, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1400(b).

### THE PARTIES

5.     FurryFreshness, LLC is a Texas limited liability company having its principal place of business located at 1220 Satterwhite Road Suite 303, Buda, Texas 78610.

6.     Bryson Bilicek is an individual residing in the State of California.

7.     Jennifer Bilicek is an individual residing in the State of California.

8.     On information and belief, MPP is a Texas limited liability company having its principal place of business located at 25702 Aldine Westfield Road, Spring, Texas 77373.

### STATEMENT OF FACTS

9.     In or about October 2020, MPP agreed to blend, bottle, and package cleaning solution for Defendants, for which Defendants agreed to pay MPP consideration as set forth by MPP's purchase orders.

10.    Defendants duly performed all their obligations under the agreement.

11.     In early 2023, Defendants began to receive defective products from MPP.  Bottled cleaning solution manufactured by MPP arrived at Defendants' warehouse bloated and leaking solution.

12.     When Defendants first discovered that a shipment of bottled solution had arrived damaged, Defendants orally informed MPP about the damaged goods.  MPP denied responsibility for the defective bottles, blaming the heat.

13.     Due to production errors, bottled solution supplied by MPP and delivered to Defendants continued to arrive damaged.  The defective bottles bloated and leaked solution.

14.     As a result of MPP's production errors and omissions, Defendants were required to dispose of approximately 150 gallons of solution and undergo considerable effort and expense to fix the damaged caused by the defective bottles and to replace the product.  Below are examples of damaged products that were disposed of by Defendants:

 

15.      In or around July 2023, Defendants became aware that an unknown number of bottled solution supplied by MPP and sent to Defendants' customers contained latent defects caused by MPP's production errors.   These defects caused solution to leak from the bottles, damaging customers' property.   These defects were not apparent at the time Defendants received the bottled solution from MPP.   The severity of the defects and the number of customers affected will become known with the passage of time.   Below are a few examples of damage to customer's property caused by MPP's production errors:








16.     Defendants' customers who received bottled solution with latent defects also left

negative reviews on FurryFreshness's Amazon ecommerce page, which damaged and continues to

damage Furry Freshness reputation.    Below are a few examples of the reviews caused by MPP's

production errors which damaged FurryFreshness's reputation:







17.     Defendants have currently paid approximately $11,844.10 to replace damaged orders and to compensate customers for the damages caused to customers' property.

18.     Approximately 37 customers that filed complaints regarding defective bottles never ordered from FurryFreshness again.  Several of these customers had been long-term customers of FurryFreshness.

19.     On June 26, 2023, Mr. Bryson Bilicek sent a Slack message to a MPP warehouse representative regarding the defective bottles: "We had a couple more complaints about the swelling gallons come in over the weekend. I know [Mr. Jarrett Bilicek] said you guys were looking into it." MPP's representative blamed the heat.

20.     On July 7, 2023, Mr. Bryson Bilicek sent a Slack message to Mr. Jarrett Bilicek and MPP's warehouse representative asking if they had "found anything out with the bloating issues?"  This message was ignored.

21.     On July 11, 2023, Mr. Bryson Bilicek sent another Slack message to Mr. Jarrett Bilicek and MPP's warehouse representative: "We got into another pallet of Quarts yesterday and the entire thing is bloating and leaking - cracking the seals in the bottle. We sent a good amount of this shipment into [Fulfillment by Amazon] and we're worried that's all going to bloat . . . We're gonna hold off on the shipment this week to give you guys time to figure out what's going on with this stuff."

22.     Mr. Jarrett Bilicek, in reply to Mr. Bryson Bilicek's July 11 message, admitted that the defects were likely caused by production errors in MPP's bottling process: "[The previous owner] never used sealed liners… so he never saw bloating to this level. He used vented caps (no seal) for gals… and we gave him those non-vented quart caps. We are sealing them now… so no way for any pressure to bleed off. . . . We have both options (vented lift 'n peel and non-vented) The vented help counter the bloating, but saw leakers in transit as well. The 100% sealed don't leak… but we were seeing some bloating. . . . Nothing process wise has changed… at this point next option

36

is to just start replacing hoses, pumps, and tanks to eliminate one of those items possibly contaminating the solution. I am led to believe it's solution based problem… because it was swelling on both quarts and gallons."

23.     In the same message, Mr. Jarrett Bilicek wrote: "Keep a log of what you have for damaged stuff… and we'll figure out something fair monetarily. I am aware that doesn't help with your customer service issues[.]"

24.     On July 23, 2023, Mr. Jarrett Bilicek further admitted that errors in MPP's bottling process caused the defects: "[MPP is] getting more and more [bloating issues]. Some are customers with stuff back from Feb/March.. so prob been an ongoing problem. And if [MPP's employees] were not rinsing [containers used to store peroxide].. maybe just getting dirtier and dirtier until we caught it[.]"

25.     Despite MPP's knowledge and information regarding the production errors and its promise that the parties would "figure out something fair monetarily," MPP failed to take steps to correct the damage caused by the defective bottles.  Instead, MPP arbitrarily and unilaterally decided that providing Defendants a credit for one shipment invoice (worth approximately $5,000) was a sufficient remedy.  Defendants in no way agreed that this was an adequate remedy for their economic and reputational damages.

26.     On August 4, 2023, Mr. Bryson Bilicek sent a Slack message to Mr. Jarrett Bilicek, informing him that Defendants would be using other products due to MPP's defective bottles and the lack of solution by MPP.

27.     As a result of the defective bottled solution, Defendants have suffered economic and reputational damages.

## COUNT I: NEGLIGENCE

28.     Defendants restate and incorporate by reference the responses and allegations contained in the foregoing paragraphs, as if fully set forth herein.

29.     Defendants allege that the bottled cleaning products at issue herein were manufactured and/or designed in a wholly negligent manner as evidenced by the defects described above.

30.     As a direct and proximate result of such negligence, Defendants have sustained damages in the form of costs, losses, and expenses that it would not otherwise have incurred, including, without limitation, out of pocket expenses for repairs to customers' property and cost to replace the defective products. Furthermore, such defects have resulted in damage to FurryFreshness's reputation and goodwill among existing and future clients.

## COUNT II: BREACH OF IMPLIED WARRANTY

31.     Defendants restate and incorporate by reference the responses and allegations contained in the foregoing paragraphs, as if fully set forth herein.

32.     MPP is a merchant seller of goods that sold bottled cleaning solution to FurryFreshness.  MPP implicitly warranted that the bottled solution provided by MPP was of merchantable quality and would pass without objection in the trade.

33.     Defendants relied upon this implied warranty.

34.     The goods MPP sold FurryFreshness were unmerchantable when they left MPP's possession.  Specifically, the leaking bottles would not pass without objection in the trade and were unfit for the ordinary purposes for which such goods are used.  Tex. Bus. & Com. Code § 2.314.

35.     Defendants provided MPP timely notice of its breach and gave MPP an opportunity to cure.  MPP failed to cure their breach.

36.     As a direct and proximate result of MPP's breach of the implied warranty of merchantability, Defendants have suffered damages including but not limited to (1) pre-judgment interest; (2) loss in value; (3) lost profits; (4) cost of delay in performance; (5) cost of mitigation; (6) cost of substitute performance; and (7) loss of goodwill.

## COUNT III: DECEPTIVE TRADE PRACTICES

37.     Defendants restate and incorporate by reference the responses and allegations contained in the foregoing paragraphs, as if fully set forth herein.

38.     FurryFreshness is a "consumer" as defined in the Texas Deceptive Trade Practice-Consumer Protection Act ("DTPA"), as set forth at Texas Business and Commerce Code § 17.01 et. seq.

39.     By virtue of its violation of the implied warranty of merchantability, MPP also violated the DTPA § 17.50(2).

40.     MPP's conduct as described above was a proximate and/or producing cause of damages to FurryFreshness.  The actual and consequential damages include but are not limited to (1) pre-judgment interest; (2) loss in value; (3) lost profits; (4) cost of delay in performance; (5) cost of mitigation; (6) cost of substitute performance; and (7) loss of goodwill.

41.     MPP's violations of the DTPA were committed knowingly and intentionally. As such, Defendants are entitled to enhanced or additional damages up to three (3) times its actual damages pursuant to DTPA § 17.50(b)(1).

## DEFENDANTS' PRAYER FOR RELIEF

WHEREFORE, Defendants pray for judgment as follows:

A.     A judgment for Defendants and against MPP;

B.     A judgment dismissing MPP's Complaint against Defendants with prejudice;

C.     A judgment that MPP take nothing on its claims;

D.    For actual damages, enhanced damages, treble damages, any awardable statutory damages, MPP's profits, treble the amount of MPP's profits and punitive damages, all in amounts to be proven at trial, plus interest;

E.    That MPP be ordered to pay Defendants' costs, expenses of litigation, including attorneys' fees and expert witness fees; and

F.    All other and further relief that the Court deems just and proper.

## **<u>DEFENDANTS' DEMAND FOR JURY TRIAL</u>**

In accordance with Federal Rule of Civil Procedure 38(b), Defendants demand a trial by jury on all issues so triable.

Dated: July 30, 2024

Respectfully submitted,

FISH & RICHARDSON P.C.

By:  */s/ David M. Hoffman*
David M. Hoffman (*attorney-in-charge*)
Texas Bar No. 24046084
SDTX Bar No. 1618373
hoffman@fr.com
111 Congress Avenue, Suite 2000
Austin, TX 78701
Tel: (512) 472-5070
Fax: (512) 320-8935

COUNSEL FOR DEFENDANTS,
FURRYFRESHNESS, LLC BRYSON BILICEK,
AND JENNIFER BILICEK

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed electronically on

July 30, 2024 and was served via CM/ECF on all counsel of record.

*/s/ David M. Hoffman*
David M. Hoffman